1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROSIE GRIJALVA JUAREZ,

11            Plaintiff,                      No. 2:11-cv-00748 KJN

12        v.

13   MICHAEL J. ASTRUE, Commissioner
     of Social Security,
14
              Defendant.                     ORDER
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") which denied, for lack of disability, plaintiff's applications for Social

18   Security Disability ("SSD") benefits under Title II of the Social Security Act and Supplemental

19   Security Income ("SSI") benefits under Title XVI of the Social Security Act.[1]  (Dkt. No. 12.)  In

20   her motion for summary judgment, plaintiff alleges that the Administrative Law Judge ("ALJ")

21   erred by (1) failing to find that plaintiff's degenerative disc disease was a severe impairment at

22   step two of the sequential evaluation process; (2) failing to properly assess the impact of

23   plaintiff's obesity; (3) failing to credit the opinion of plaintiff's treating physician Dr. Powell

24   _____

25       [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed
26   before a United States Magistrate Judge.  (Dkt. Nos. 8, 15.)

                                                   1

1  without a legitimate basis for so doing; (4) failing to credit plaintiff's and plaintiff's daughter's

2  testimony regarding the nature and extent of plaintiff's functional limitations; and (5) failing to

3  credit the vocational expert ("VE") testimony in response to the hypothetical the plaintiff asserts

4  most accurately reflects her residual functional capacity ("RFC").  (("Pl.'s Memo.") Dkt. No. 19.)

5            After careful consideration of the entire record and the arguments submitted by

6  the parties, for the reasons that follow, the court grants plaintiff's motion for summary judgment

7  in part, denies the Commissioner's cross-motion for summary judgment, and remands this case

8  for further proceedings.  Specifically, the court concludes that, in light of new radiological

9  evidence considered by the Appeals Council and therefore a part of the record on review, the

10  ALJ's reasons for rejecting treating physician Dr. Powell's opinion are not supported by the

11  record as a whole.  As a result, the ALJ's determination at step two as to whether plaintiff's

12  degenerative disc disease is a severe impairment and the assessment of plaintiff's RFC are

13  potentially premised on an improper weighting of the medical opinions in the record.

14  Accordingly, the court remands this matter for further proceedings.  The court does, however,

15  find that the ALJ properly assessed the evidence of plaintiff's obesity and any functional

16  limitations due to her obesity.  The court does not reach plaintiff's additional assignments of

17  error because the aforementioned error likely impacted the manner in which the ALJ evaluated

18  plaintiff's credibility and the third-party statements in the record.  The ALJ should consider

19  plaintiff's remaining allegations of error on remand.

20  I.       BACKGROUND[2]

21          A.       Procedural Background

22                   Plaintiff applied for SSD and SSI benefits on September 16, 2008, alleging

23  disability commencing on August 1, 2008 (See Administrative Transcript ("AT") 53, 54, 137.)

24

25          [2]  Because the parties are familiar with the factual background of this case, including
    plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
    facts related to plaintiff's impairments and medical history will be addressed only insofar as they
26  are relevant to the issues presented by the parties' respective motions.

2

1    The Social Security Administration denied plaintiff's application initially and upon

2    reconsideration.  (AT 62, 70.)  Plaintiff filed a request for a hearing before an ALJ (AT 84), and a

3    hearing was conducted regarding plaintiff's claim on January 5, 2010.  (AT 18-41.)  Plaintiff,

4    who was represented by counsel at the hearing, appeared and testified at the hearing.  (Id.)  A

5    vocational expert also testified at the hearing.  (Id.)

6                In a decision dated June 10, 2010, the ALJ denied plaintiff's application.  (AT 8-

7    17.)  As discussed below, the ALJ determined that plaintiff was able to perform her past relevant

8    work as a hospital admitting clerk and, alternatively, perform jobs that existed in significant

9    numbers in the national economy.[3]  (AT 15-17.)  The ALJ's decision became the final decision of

10

11            [3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
      Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, SSI is paid to disabled
12    persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term
      "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due
13    to "any medically determinable physical or mental impairment which can be expected to result in
      death or which has lasted or can be expected to last for a continuous period of not less than
14    twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation
      governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920,
15    416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court
      of Appeals has summarized the sequential evaluation as follows:
16
                    Step one:  Is the claimant engaging in substantial gainful
17            activity?  If so, the claimant is found not disabled.  If not, proceed
              to step two.
18                  Step two:  Does the claimant have a "severe" impairment?
              If so, proceed to step three.  If not, then a finding of not disabled is
19            appropriate.
                    Step three:  Does the claimant's impairment or combination
20            of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
              404, Subpt. P, App.1?  If so, the claimant is automatically
21            determined disabled.  If not, proceed to step four.
                    Step four:  Is the claimant capable of performing his past
22            work?  If so, the claimant is not disabled.  If not, proceed to step
              five.
23                  Step five:  Does the claimant have the residual functional
              capacity to perform any other work?  If so, the claimant is not
24            disabled.  If not, the claimant is disabled.

25    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

26            The claimant bears the burden of proof in the first four steps of the sequential evaluation

1  the Commissioner when the Appeals Council denied plaintiff's request for review.  (AT 1-4.)

2  Plaintiff subsequently filed this action.

3         B.     Summary of the ALJ's Findings

4         The ALJ conducted the required five-step, sequential evaluation.  At step one, the

5  ALJ concluded that plaintiff had not engaged in substantial gainful activity since August 1, 2008,

6  the alleged onset date.  (AT 11.)  At step two, the ALJ concluded that plaintiff had the severe

7  impairments of status post bilateral knee replacements, fibromyalgia, and obesity.  (Id.)  At step

8  three, the ALJ found that plaintiff did not have an impairment or combination of impairments

9  that met or medically equaled any impairment listed in the applicable regulations.  (Id.)

10         The ALJ next assessed plaintiff's RFC as follows:

11      [T]he claimant has the residual functional capacity to perform light work
    as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit, stand

12      and/or walk 6 hours in an 8-hour workday with normal breaks, can never
    climb ladders, ropes, or scaffolds, can never crawl, can occasionally climb

13      ramps and stairs, balance, stoop, kneel or crouch, and would have to avoid
    concentrated exposure to extreme cold and vibration.

14

15  (AT 11.)  In reaching his conclusion, the ALJ discounted, as not fully credible, plaintiff's

16  statements and the statements of plaintiff's daughter regarding the intensity, persistence, and

17  limiting effects of plaintiff's symptoms or impairments.  (AT 13-15.)

18         At step four, the ALJ found that plaintiff's RFC did not preclude plaintiff from

19  performing her past relevant work as a hospital admitting clerk.  (AT 16.)  Alternatively, the ALJ

20  found, considering the plaintiff's age, education, work experience and RFC, that there are jobs

21  that exist in significant numbers in the national economy that the plaintiff can perform.  (Id.)

22  Accordingly, the ALJ found plaintiff not disabled.  (AT 17.)

23  ////

24  ////

25

26  process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
evaluation process proceeds to step five.  Id.

1    II.    STANDARDS OF REVIEW

2            The court reviews the Commissioner's decision to determine whether it is (1) free

3    of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

4    Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

5    Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

6    Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence' means

7    more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

8    reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.

9    Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

10   1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

11   Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).

12           "The ALJ is responsible for determining credibility, resolving conflicts in medical

13   testimony, and for resolving ambiguities."  Andrews, 53 F.3d at 1039; see also Tommasetti, 533

14   F.3d at 1041 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical

15   evidence.").  Findings of fact that are supported by substantial evidence are conclusive.  42

16   U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the

17   evidence as a whole can support either a grant or a denial, [the court] may not substitute [its]

18   judgment for the ALJ's."  Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149,

19   1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir.

20   2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's

21   decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

22   However, the court "must consider the entire record as a whole and may not affirm simply by

23   isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198 (quoting

24   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue,

25   504 F.3d 1028, 1035 (9th Cir. 2007).

26   ////

1  III.  DISCUSSION

2      A.    The ALJ Properly Assessed Plaintiff's Obesity

3          Plaintiff asserts that even though the ALJ found her obesity to be a component of

4  her severe physical impairment at step two, the ALJ "failed to evaluate the impact of this

5  additional impairment ability to function in a sustained manner." (Pl. Memo. at 12-13.)  Plaintiff

6  is correct that obesity must be considered throughout the sequential evaluation process, including

7  when determining an individual's RFC.  SSR 02–1p.  "The combined effects of obesity with

8  other impairments may be greater than might be expected without obesity."  SSR 02–1p.  The

9  Ninth Circuit has held that, pursuant to SSR 02–1p, the ALJ must consider obesity in

10 determining RFC based on the information in the case record.  Burch, 400 F.3d at 683.

11         In determining plaintiff's RFC, the ALJ thoroughly discussed the record medical

12 evidence of plaintiff's functional limitations.  (AT 11-15.)  Plaintiff's obesity was noted in the

13 record.  Plaintiff points to no instances, however, where her obesity caused any functional

14 limitations apart from those already considered by the ALJ.  Accordingly, the ALJ properly

15 analyzed plaintiff's obesity at step two and throughout the evaluation.  The analysis was

16 supported by substantial evidence and was free of legal error.

17     B.    The Record As A Whole Does Not Support The ALJ's Rejection of Treating
             Physician Dr. Powell's Opinion.
18

19         Plaintiff claims the ALJ erred by rejecting the treating opinion of Dr. Powell in

20 favor of the consultative examiner and nonexamining State Agency opinions, which led the ALJ

21 to erroneously conclude:  (1) that plaintiff's degenerative disc disease was not severe; and (2)

22 that plaintiff's RFC is less restrictive than recommended by her treating physician, which led to

23 the ALJ finding that plaintiff could perform her past work and other work available in the

24 national economy.  (Pl.'s Mot. at 16-18.)  Plaintiff argues that the ALJ's reasons for rejecting her

25 treating physician's opinion are not supported by the record as a whole.  (Id.)  For the reasons

26 explained below, plaintiff's argument is well-taken.

6

1          Medical opinions of three types of medical sources are recognized in social

2    security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

3    do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

4    claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

5    Generally, a treating physician's opinion should be accorded more weight than opinions of

6    doctors who did not treat the claimant, and an examining physician's opinion is entitled to

7    greater weight than a non-examining physician's opinion. Id. Where a treating or examining

8    physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear

9    and convincing" reasons for rejecting the treating physician's ultimate conclusions. Id.

10          Because the Social Security Administration ("SSA") favors the opinion of a

11   treating physician over non-treating physicians, see 20 C.F.R. § 404.1527, if the treating or

12   examining doctor's medical opinion is contradicted by another doctor, the Commissioner must

13   provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons

14   must be supported by substantial evidence in the record. Id. at 830-31; accord Valentine, 574

15   F.3d at 692. "'The ALJ can meet this burden by setting out a detailed and thorough summary of

16   the facts and conflicting clinical evidence, stating his interpretation thereof, and making

17   findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751

18   (9th Cir. 1989)). However, "[t]he ALJ must do more than offer his conclusions. He must set

19   forth his own interpretations and explain why they, rather than the doctors', are correct." Orn v.

20   Astrue, 495 F.3d 625 (9th Cir. 2007) (citing Embrey, 849 F.2d at 421-22). Moreover, "a finding

21   that a treating source medical opinion . . . is inconsistent with the other substantial evidence in

22   the case record means only that the opinion is not entitled to 'controlling weight,' not that the

23   opinion should be rejected." Id. at 631-32 (quoting Social Security Ruling ("SSR") 96-2p, 1996

24   WL 374188, at *4 (July 2, 1996)). "In many cases, a treating source's medical opinion will be

25   entitled to the greatest weight and should be adopted, even if it does not meet the test for

26   controlling weight." SSR 96-2p, 1996 WL 374188, at *4.

                                                    7

When Dr. Powell completed his March 12, 2009 RFC Assessment of plaintiff, he had treated plaintiff since 2002.  Dr. Powell diagnosed plaintiff with fibromyalgia, degenerative joint disease/degenerative disc disease of the cervical and L-5 spine, grade 1 spondylolisthesis, depression, and bilateral knee replacement.  (AT 246-47.)  Dr. Powell opined that plaintiff can sit, stand and/or walk less than 2 hours in an 8-hour workday with normal breaks since she lies down as much as 6 to 8 hours, but will need to include periods of walking around during the 8-hour workday every 10 minutes for 3 minutes each time, will require shifting positions at will from sitting, standing, or walking, needs to take unscheduled breaks 4 to 6 times a day to lie down, but does not need to use a cane or other assistive device while engaging in occasional standing or walking.  (AT 248-50.)  Dr. Powell further opined that plaintiff can occasionally lift up to 10 pounds but can never lift 20 pounds or more, is able to use both hands to grasp, turn and twist objects 50% of the time, use her fingers for fine manipulations 50% of the time, and is unable to ever reach overhead, crouch or stoop.  (Id.)  Dr. Powell opined that plaintiff is incapable of even "low stress" jobs and stated her medication causes her to be sleepy and "groggy."  (Id.)  At plaintiff's hearing before the ALJ, the vocational expert testified that an individual with these limitations could not perform any jobs.  (AT 37.)

The ALJ did not adopt the RFC put forth by Dr. Powell, instead giving Dr. Powell's opinion "limited weight" on the ground it was "inconsistent with the record as a whole."  (AT 15.)  Specifically, the ALJ stated:

> [T]he record shows that the claimant is less limited than stated in this opinion.  Moreover, Dr. Powell's treatment notes indicate that his diagnoses are often unsupported by any objective medical findings and are based primarily on the claimant's subjective allegations, rendering his opinion less persuasive.

(AT 15 (internal citation omitted).)

At the time the ALJ issued his opinion, the radiological evidence consisted of just one cervical spine x-ray from October 2007, which found "C5-6 degenerative disc disease and osteophytic spurring with possible C6-7 disease as well although this is less well documented."

1    (AT 193.)  The x-ray report advised further evaluation with magnetic resonance imaging ("MRI")

2    of the cervical spine.  (Id.)  Dr. Powell requested a cervical spine MRI for plaintiff in July 2009.

3    (AT 281.)  Plaintiff finally received the advised MRI in February 2010, after her January 5, 2010

4    hearing before the ALJ.  (AT 18-41, 328-29.)  The MRI report documented, among other things,

5    a broad based disc bulge at C5-C6 with a left central component that effaces the ventral CSF

6    space mild to moderate left neural foraminal narrowing, a broad based disc bulge that contracts

7    the ventral aspect of the cord at C6-C7 with mild to moderate spinal canal narrowing and

8    bilateral uncovertebral and facet hypertropy seen with moderate bilateral neural foraminal

9    narrowing.  (AT 328.)

10           Plaintiff submitted the MRI report along with her request for review of the ALJ's

11   decision to the Appeals Council.  (AT 4.)  In its denial of plaintiff's request for review dated

12   January 20, 2011, the Appeals Council made the additional MRI evidence a part of the record

13   and stated that it considered the evidence and "found no reason to under our rules to review the

14   [ALJ's] decision."  (AT 1.)  "[W]hen the Appeals Council considers new evidence in deciding

15   whether to review a decision of the ALJ, that evidence becomes a part of the administrative

16   record, which the district court must consider when reviewing the Commissioner's final decision

17   for substantial evidence."  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th

18   Cir. 2012).

19           In light of the MRI report, the record as a whole does not support the ALJ's

20   primary basis for rejecting treating physician Dr. Powell's opinion as "unsupported by any

21   objective medical findings and . . . based primarily on the claimant's subjective allegations."

22   (AT 15.)  Accordingly, the undersigned grants plaintiff's motion for summary judgment in part.

23   The undersigned concludes that a remand of this matter to the agency is appropriate because the

24   ALJ will be required to reassess plaintiff's degenerative disc disease past step two of the analysis,

25   including a possible reformulation of plaintiff's RFC after reconsidering the weight to give the

26   medical opinion evidence.  The ALJ's credibility determination and assessment of the third-party

statements in the record may also be effected by plaintiff's cervical spine MRI report.

IV.     CONCLUSION

        For the reasons stated above, IT IS HEREBY ORDERED that:

        1.      Plaintiff's motion for summary judgment (Dkt. No. 19) is granted in part.

        2.      The Commissioner's cross-motion for summary judgment (Dkt. No. 23) is

denied.

        3.      The Clerk of Court enter judgment in favor of the plaintiff.

        IT IS SO ORDERED.

DATED:  September 18, 2012


                                        KENDALL J. NEWMAN
                                        UNITED STATES MAGISTRATE JUDGE